1

HONORABLE RONALD B. LEIGHTON

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CERNER MIDDLE EAST LIMITED,

CASE NO. C16-5706RBL

9

Plaintiff,

ORDER ON MOTIONS TO
REMAND AND DISMISS

10

v.

11

[Dkt. #s 7, 10, 13 & 21]

BELBADI ENTERPRISES LLC, and
VANDEVCO LIMITED,

12

13

Defendants.

14

15

THIS MATTER is before the Court on Plaintiff Cerner's Motion to Remand the case to

16

Clark County Superior Court [Dkt. #13], and on Defendant Belbadi's Motion to Dismiss [Dkt.

17

#10]. Cerner (a citizen of Missouri and the Cayman Islands) claims the defendants' removal was

18

improper because this Court does not have subject matter jurisdiction over. Belbadi (a United

19

Arab Emirates company with a principal place of business in Abu Dhabi) argues that the Court

20

lacks *quasi in rem* and *in personam* jurisdiction over it.

21

22

23

24

ORDER - 1

1    This is one of at least six U.S. lawsuits Cerner filed in the wake of a foreign arbitration

2  award[1] that Cerner obtained against two non-parties, iCapital and Ahmed Saeed Mahmoud Al-

3  Badie Al-Dhaheri ("Dhaheri," an individual). Cerner contracted with iCapital's predecessor to

4  provide medical services software and technology services in the U.A.E.  A dispute arose and the

5  Cerner and iCapital engaged in a foreign arbitration, consistent with their agreement. The

6  arbitration resulted in a substantial award in Cerner's favor. It also apparently determined that

7  Dhaheri was iCapital's alter ego, despite the fact he was not a party to the agreement and was not

8  a part of the arbitration.  Defendants argue that this determination was made without jurisdiction

9  and is wrong, and that it is necessarily implicated in Cerner's collection efforts here.

10    As part of the parties' subsequent settlement of that dispute, another Dhaheri-owned

11  entity, Belbadi, unconditionally guaranteed iCapital's debts to Cerner. Cerner claims it settled in

12  reliance on Belbadi's agreement to "back" its guarantees with its global assets, including

13  specifically Vandevco's Vancouver Center real estate development in Vancouver, Washington.

14  Cerner claims iCapital soon "bounced" a check for some of the debt, breaching the settlement

15  agreement and triggering Belbaldi's liability on its Guarantees. Cerner claims Belbadi owes it

16  $63,000,000, and this suit is an effort to simultaneously enforce the guarantees and collect the

17  debt from Belbadi's (and Dhaheri's) forum assets, Vandevco and its development, the

18  Vancouver Center.

19

20

21

22

23

_____

[1] The award was entered by the International Chamber of Commerce International Court

24  of Arbitration, seated in Paris.

ORDER - 2

1       Dhaheri is the sole shareholder of Belbadi and iCapital. Cerner alleges that Belbadi in

2   turn owns Defendant Vandevco[2], a Washington corporation. Vandevco's (and the Vancouver

3   Center's) presence in Washington is Cerner's jurisdictional "hook" for suing Belbadi and

4   Vandevco in Clark County.

5       Cerner alleges that Vandevco is Belbaldi's alter ego, and that Dhaheri is the alter ego of

6   Belbadi, Vandevco, and Vandevco's various subsidiaries (the "VanSubs," all of which appear to

7   be Washington LLCs related to the Vancouver Center). It asserts *quasi in rem* jurisdiction over

8   Belbadi on the basis of its ownership of Vandevco and/or the VanSubs, claiming that

9   Vandevco's shares, as Belbadi's assets, can be attached in satisfaction of Belbaldi's guarantee

10  obligations to Cerner.

11      It also asserts *in personam* jurisdiction over Belbadi, based on its claim that Vandevco

12  (and one of the VanSubs, VanRes) are Belbadi's alter egos. This claim is based on the allegation

13  that a VanSub and others involved in the Vancouver Center have made "Subsidiary Payments"

14  of $3.2 million that was rightfully Vandevco's, directly to Belbadi over the years.

15      Belbadi and Vandevco timely removed the Clark County action here, alleging both that

16  the court has diversity jurisdiction and that the Court has original jurisdiction over Cerner's

17  claim relating to an arbitration award falling under the Convention on the Recognition and

18  Enforcement of Foreign Arbitral Awards.  *See* 9 U.S.C. §205.

19      Cerner seeks remand to Clark County. It argues that there is no diversity jurisdiction

20  because a foreign citizen (Cerner) cannot sue a foreign citizen (Belbadi) in this Court, and that

21

22  ───────────────

23      [2] Defendants claim Vandevco is owned by Willamette Enterprises, a Cayman Islands
    corporation. They do not address Cerner's allegation that Dhaheri owns Belbadi, which in turn is
24  Vandevco's "titular" owner.

ORDER - 3

1    the removal was improper because Defendant Vandevco is the resident party, and the forum

2    defendant rule precludes removal in that instance. Cerner also argues that its effort to enforce

3    Belbadi's guarantees do not "relate to an arbitration agreement or award falling under the

4    Convention"—it claims to seek judgment on unconditional guarantees that are "independently

5    enforceable under state law" regardless of the "effect and validity of any arbitration award."

6         Belbadi and Vandevco now concede that there is no diversity jurisdiction, but continue to

7    argue that Cerner's claims (and their own affirmative defenses, raised in the Removal Notice)

8    necessarily relate to the underlying foreign arbitration award. They argue that Cerner's "alter

9    ego" theories are intended to—and if successful, would—enforce that award against them[3]. They

10   point out that the allegedly unrelated Award is attached to Cerner's complaint.

11        The defendants also seek dismissal for lack of jurisdiction, and urge the Court to address

12   this simpler, threshold question first. The motions are not unrelated. Defendants argue that

13   Cerner's assertion of *quasi in rem* jurisdiction over Belbadi's forum assets is flawed—Cerner

14   seeks to obtain a judgment against Belbadi (on its guarantees) and to enforce that judgment

15   against the assets of its alleged alter ego, Vandevco, in one proceeding. It argues that the

16   required nexus between the forum, the defendant and the litigation is not met simply because

17   Vandevco's assets are located here and Cerner seeks to obtain them.  It also argues that Cerner's

18   assertion of personal jurisdiction over Belbadi on an alter ego theory is flawed, as it has not and

19

20

21   ───────────────

22        [3] Defendants also argue that it would have the effect of enforcing the award against a
     non-party alter ego, Dhaheri, who did not sign the agreement to arbitrate. One of their
23   affirmative defenses to this action is that the ICC arbitrator did not have authority to determine
     that Dhaheri was bound to arbitrate under an alter ego theory, because under the applicable
24   Missouri law, that determination should have been made by a court in the first instance.

1  cannot show that the failure to disregard the separate entities would result in fraud or injustice to

2  Cerner.

3  **A.  Motion to Remand**

4      The party asserting federal jurisdiction has the burden of proof on a motion to remand to

5  state court. *See Conrad Associates v. Hartford Accident & Indemnity Co.*, 994 F. Supp. 1196

6  (N.D. Cal.  1998). The removal statute is strictly construed against removal jurisdiction, and the

7  strong presumption against removal jurisdiction means that the defendant always has the burden

8  of establishing removal is proper.  *Id.* at 1198.  It is obligated to do so by a preponderance of the

9  evidence.  *Id.* at 1199; *see also Gaus v. Miles*, 980 F.2d 564, 567 (9th Cir. 1992).  Federal

10  jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.

11  *Id.* at 566.

12      Defendants concede that there is no diversity jurisdiction in this case.  But they claim that

13  §205 of the Arbitration Act makes the case removable, because Cerner's claims necessarily

14  "relate to" an arbitration agreement or award falling under the Convention.

15      The relevant statute and the cases construing it set a low bar for removability where the

16  claims (or defenses) relate to an international arbitration award:

17      [W]here the subject matter of an action or proceeding pending in a State court
        *relates to* an arbitration agreement or award falling under the Convention. . . . The
18      procedure for removal of causes otherwise provided by law shall apply, except
        that the ground for removal provided in this section need not appear on the face of
19      the complaint but may be shown in the petition for removal.

20  9 U.S.C. §2015 (emphasis added). The Ninth Circuit has held that this language is "plainly

21  broad" and noted that similar language in other statutes conveys "sweeping removal

22  jurisdiction." *See Infuturia Global Ltd. v. Sequus Pharmaceuticals, Inc*., 631 F.3d 1133, 1138

23  (9th Cir. 2011). It agreed with the Fifth Circuit that "whenever an arbitration agreement falling

24  under the convention could *conceivably* affect the outcome of the plaintiff's case, the agreement

1   'relates to' the plaintiff's suit." *Id., citing Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002)

2   (emphasis added).

3       Cerner claims it seeks only to enforce the Belbadi Guarantees, and not an order

4   enforcing, interpreting or otherwise relating to the underlying foreign arbitration award. But that

5   is an over-simplification. Cerner must concede that the Belbadi Guarantees called for

6   interpretation and litigation in the U.A.E., even if they were "unconditional" and whether or not

7   they included a waiver of defenses.  Cerner has not yet obtained a judgment on those guarantees,

8   and the defendants claim that one of their defenses relates directly to the underlying arbitration—

9   they claim that the arbitrator did not have the authority to determine that Dhaheri was iCaptial's

10  alter ego, or to make Dhaheri liable for the award on that basis.

11      If this really were a straight-forward effort "solely" to sue Belbadi to enforce its

12  guarantees of iCaptial's debt under the settlement agreement that resulted from the arbitration,

13  Cerner's claim that the award is unrelated might be more persuasive. And if it were seeking to

14  enforce an already-obtained judgment against Belbadi's Clark County assets, the "unrelated"

15  claim might prevail. But (as will be discussed below) these are not Cerner's claims. Cerner's

16  only colorable basis for suing Belbadi in Clark County (rather than the agreed-upon U.A.E.

17  forum) is its claim that Vandevco and Belbadi are alter egos, that Belbadi (and iCapital) are

18  Dhaheri's alter egos, and that, as a result, it is entitled to attach and execute on Vandevco's

19  assets.

20      It is plainly "conceivable" that the international arbitration award relates to or will have

21  some impact on Cerner's claims or defendants' affirmative defenses in this case. The Court's

22  removal jurisdiction under these circumstances is broad and the Motion to Remand is **DENIED**.

23

24

**B.  Motion to Dismiss**

Belbadi argues that it is a U.A.E. corporation that agreed to litigate its obligations to Cerner in the U.A.E., under U.A.E. law. It denies any connection to Washington, and argues that Cerner's *quasi in rem* and *in personam* efforts to sue it here are both flawed.

**1.  *Quasi in rem* jurisdiction**

Cerner's *quasi in rem* jurisdictional theory is that Belbadi owes it money on the guarantees and its property is located here. It seeks to attach Belbadi's forum property, establish Belbadi's liability on the guarantees, and execute the anticipated judgment against the property, simultaneously, in this action. It claims that the property is therefore both the "subject" of the litigation and is "related to" its claims against Belbadi under the guarantees. It also claims that the property's presence here is not fortuitous, but is instead the product of Belbadi's "conscious and purposeful availment" of this forum, by developing, owning and operating the Vancouver Center.

The parties agree that *quasi in rem* jurisdiction is measured against *Shaffer*:

> The case for applying to jurisdiction in rem the same test of "fair play and substantial justice" as governs assertions of jurisdiction in personam is simple and straightforward. It is premised on recognition that "(t)he phrase, 'judicial jurisdiction over a thing', is a customary elliptical way of referring to jurisdiction over the interests of persons in a thing." …This recognition leads to the conclusion that in order to justify an exercise of jurisdiction in rem, the basis for jurisdiction must be sufficient to justify exercising "jurisdiction over the interests of persons in a thing." The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe*.

*Shaffer v. Heitner*, 433 U.S. 186, 207-10 (1977).

Belbadi argues that Cerner is asserting *quasi in rem* jurisdiction by attachment, in a dispute that does not otherwise relate to the property to be attached—it is instead a suit to enforce Belbadi's guarantees of iCapital's debt, which arose from the arbitration award and the

1  subsequent settlement. Thus, it claims, Cerner must demonstrate some nexus between Belbadi,

2  the forum, and the litigation, beyond Belbadi's mere ownership[4] of property here. *See Shaffer* at

3  204 (1977) (the relationship between the defendant, the litigation and the forum, are the central

4  concern of the due process inquiry); *see also Office Depot. Inc. v. Zuccarini*, 596 F.3d 696 (9th

5  Cir. 2010). Belbadi argues that while an action to execute an *existing* judgment might satisfy

6  these concerns, the mere presence of a defendant's assets in the forum does not confer

7  jurisdiction in a lawsuit that seeks to determine the defendants liability as an original matter.  *See*

8  *H. Ray Baker, Inc., v. Associated Banking Corp*., 592 F.2d 550, 552 (9th Cir. 1979) (presence of

9  assets in a state is a relevant, but not sufficient, contact).  Belbadi claims that the bare fact of its

10  passive ownership of Vandevco's shares cannot establish the required nexus.

11       Cerner claims these requirements are satisfied because the defendant's property (the

12  Vancouver Center) is in fact the "subject of the litigation" and is "directly related to" its claims

13  under the Belbadi Guarantees.

14       It also argues that the property's presence here is hardly fortuitous; it claims Belbadi

15  developed[5], owns and operates the Vancouver Center.  It relies on *Feder v Turkish Airlines,* 441

16  F.Supp. 1273 (S.D.N.Y. 1977), where the defendant's act of maintaining a bank account in New

17  York to further its business operations there was not "fortuitous," and the forum court could

18  exercise *quasi in rem* jurisdiction over that account—a distinction from *Shaffer* that even Cerner

19  recognizes, where the defendant had "never set foot in or otherwise did business in" the forum.

20

21  ────────────

22       [4] Belbadi points out that Vandevco is actually "the property" Cerner seeks to attach and execute upon, and that the guarantees made no mention of Vandevco or the Vancouver Center.

23
       [5] Factually, Cerner points to a letter Belbadi wrote to Vancouver's mayor in 2015,
24  describing its 17-year, one hundred million dollar investment in the Vancouver Center.

ORDER - 8

1    The Court does not agree that the Vancouver Center is the subject of Cerner's claim

2  against Belbadi in the way that these authorities contemplate. It is true that Cerner literally seeks

3  to obtain Vandevco's shares, or the Vancouver Center's revenue, at the end of this case as a

4  mechanism for enforcing Belbadi's guarantee to pay iCapital's debt. But the "subject" of the

5  litigation is its breach of contract (guarantee) claim against Belbadi. Vandevco and the

6  Vancouver Center are instead the means for *collecting*[6] a judgment, which it has not yet

7  obtained. For the same reason, the forum assets are not "directly related" to, the core, guarantee

8  enforcement claim; they are instead a subset of apparently global assets that could be used to

9  enforce a judgment, once obtained.

10    Finally, Cerner's claim that Belbadi's indirect ownership of Vandevco amounts to the

11  constitutionally-required purposeful availment of the forum necessarily implicates its alter ego

12  theory, discussed below.  Absent that, there is no discernable connection at all between the

13  Vandevco, the Vancouver Center and the guarantees.

14    **2.  *In personam* jurisdiction**

15    Cerner claims that Belbadi is subject to *in personam* jurisdiction as Vandevco's alter ego.

16  The factual basis[7] for this claim is a series of payments by a VanSub (VanRes) and others

17  totaling something over $3 million to Belbadi, which Cerner claims was instead owed to

18

19  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

20    [6] Belbadi points out that while it agreed to securitize its guarantee obligations with its
    global assets, there is no evidence or claim that Cerner actually took a security interest in the
21  forum assets. Instead, Cerner seeks different remedy: pre-judgment attachment of assets, which
    requires it to demonstrate the probable validity of its underlying claim.

22
    [7] Cerner also makes conclusory allegations that Dhaheri, Belbadi, Vandevco and the
23  VanSubs are actually a single business enterprise dominated by Dhaheri and that "Belbadi,
    through the use of various bank accounts in the United States, has essentially served as Dhaheri's
24  personal piggy bank."

1  Vandevco. The legal basis is Cerner's claim that these payments are prima facie evidence that

2  Vandevco is Belbadi's alter ego.

3  The parties generally agree on the showing Cerner must make on its alter ego claim.

4  Cerner emphasizes that the showing required for jurisdiction purposes is less stringent than it is

5  for liability:

6  Under Ninth Circuit law, a plaintiff makes a prima facie case of alter ego over a
   defendant by alleging "(1) that there is such unity of interest and ownership that the
7  separate personalities [of the two entities] no longer exist and (2) that failure to
   disregard [their separate identities] would result in fraud or injustice." *Doe v. Unocal*
8  *Corp.*, 248 F.3d at 926. The alter ego showing for jurisdictional purposes is less
   stringent than for liability purposes. *See Stuart v. Spademan*, 772 F.2d 1185, 1198, n.
9  12 (5th Cir. 1985) (noting that "the alter ego test for attribution of contacts, i.e.,
   personal jurisdiction, is less stringent than that for liability").

10 [Dkt. #36 at 16]. Belbadi emphasizes that Cerner must demonstrate that the alleged lack of

11 corporate formalities resulted or would result in fraud, wrong or injury to Cerner: "In exceptional

12 circumstances, the corporate entity will be disregarded where its recognition would aid in

13 perpetrating a fraud or result in manifest injustice." [Dkt. #10 at 11, c*iting Truckweld Equipment*

14 *Co., Inc. v. Olson*, 26 Wash. App. 638, 644-45, 618 P.2d 1017 (1980) ]. But it argues that the

15 alleged corporate informality is not enough where the plaintiff cannot tie it to any resulting fraud

16 misrepresentation to the plaintiff. "Typically, the injustice which dictates a piercing of the

17 corporate veil is one involving fraud, misrepresentation, or some form of manipulation of the

18 corporation to the stockholder's benefit *and creditor's detriment*." *Id*. at 644-45 (emphasis

19 added).

20 Cerner's claim that the Subsidiary Payments should have been made to Vandevco, rather

21 than Belbadi, does not support any inference that Belbadi used *Vandevco* to defraud or prejudice

22 Cerner; Cerner contracted with Belbadi, not Vandevco.  Belbadi is not attempting to "hide"

23 behind Vandevco's corporate form, which is the typical situation in which veil-piercing is used

24

ORDER - 10

1  to avoid fraud or injustice. *See, for example Curtis v Illumination Arts, Inc.,* 2013 WL 6173799

2  (W.D. Wash. 2013), cited by Cerner:

> To satisfy the first element, the court must find an abuse of the corporate form,
> which typically involves fraud, misrepresentation, or some form of manipulation
> of the corporate to the stockholder's benefit and the creditor's detriment. . . . To
> satisfy the second element, *the wrongful corporate activities must actually harm*
> *the party seeking relief so that disregard is necessary.*

6  *Id.* at *8-8, *citing Meisel v. M & N Modern Hydraulic Press Co*., 97 Wash.2d 403 (1982)

7  (emphasis added). There is no claim and no evidence that Vandevco's corporate informalities

8  harmed Cerner.

9      Furthermore, Vandevco's formation and some of the payments pre-dated the guarantees,

10  the guarantees make no reference to Vandevco, and there is simply no viable claim that any

11  informality (or even shenanigans) regarding Vandevco's corporate form had any effect on

12  Cerner's conduct or its ability to enforce Belbadi's guarantees. And, as Belbadi points out in

13  Reply, Cerner does not really address the fraud or injustice prong of the veil-piercing test.

14  Neither iCapital's bounced check nor Belbadi's apparent refusal to pay on its guarantees

15  implicate Vandevco or show that its corporate form's alleged misuse amounts to fraud against

16  Cerner.

17      Cerner has not made out a prima facie case for piercing Vandevco's corporate veil to

18  avoid fraud or injustice, and its claim of personal jurisdiction over Belbadi based on that theory

19  is insufficient as a matter of law. Belbadi's Motion to Dismiss on that basis is GRANTED.

20      Belbadi's argument that the case cannot proceed against Vandevco in Belbadi's absence

21  under Rule 19 is unrebutted and is clearly correct. This matter is therefore **DISMISSED**.  The

22

23

24

ORDER - 11

1  Pending Motion for Contempt [Dkt. #7] is **DENIED,** and the Motion to Vacate the TRO entered

2  by the Superior Court [Dkt. #21] is **GRANTED**.

3         IT IS SO ORDERED.

4         Dated this 14th day of February, 2017.

5

6         _____

7         Ronald B. Leighton
        United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24