HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CERNER MIDDLE EAST LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>BELBADI ENTERPRISES LLC, et al.,<br><br>Defendants. | CASE NO. C16-5706RBL<br><br>ORDER DENYING MOTION FOR STAY PENDING APPEAL |

THIS MATTER is before the Court on Plaintiff Cerner's Motion [Dkt. #48] for an Order (1) staying this Court's Order dismissing the case for lack of jurisdiction, and (2) restoring the temporary restraining order entered by the Clark County Superior Court prior to removal, pending its appeal to the Ninth Circuit.

Cerner reiterates that the Court does not have subject matter jurisdiction (and should have remanded the case to state court), because its claims against Vandevco and Belbadi are wholly unrelated to its ICC arbitration award against iCapital and Dhaheri. It continues to claim that the

court[1] has personal jurisdiction over Belbadi because it is Vandevco's alter ego, and because Vandevco's forum assets are not fortuitously or coincidentally located here; instead, they are directly implicated in performing the agreement [the Belbadi Guarantees] supporting Cerner's claim. And even if they were not, Cerner claims, Belbadi's investment and development of the Vancouver Center put it on notice of the possibility of having to defend that property here. *Citing Feder v Turkish Airlines*, 441 F. Supp. 1273, 1278 (S.D.N.Y. 1977).

The parties and the Court agree on the standard against which Cerner's motion is to be measured: The purpose of a TRO is "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing [on the preliminary injunction application], and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423 (1974); *see also Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130–31 (9th Cir. 2006). To obtain a TRO or a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party absent preliminary relief; (3) that a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where there are "serious questions going to the merits" and a "balance of hardships that tips sharply towards the plaintiff," a preliminary injunction can be issued, "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).

---

[1] Technically, Cerner claims that *Washington* has jurisdiction, and it wants the superior court to exercise it. There is no meaningful difference in the personal jurisdiction analysis between the state court and this Court.

Cerner argues that, notwithstanding this Court's prior Order, it is likely to succeed on the merits of its motion to remand, its assertion of jurisdiction over Belbadi, and on the substance of its claims. It seeks a stay of the dismissal, and restoration of the state court's TRO, because it claims otherwise Vandevco will dissipate the assets Cerner will ultimately need to enforce the Belbadi Guarantees. It claims Belbadi has a long trail of unpaid debt and related litigation, and that it is already "squirrelling away" Vandevco's assets: $3.2 million has been paid to Belbadi that should have stayed in or been paid to Vandevco; Vandevco has sold and continues to market condominium units in defiance of the state court's TRO, and another $900,000 has been paid to Belbadi rather than Vandevco by a title insurer and a property manager. It argues that absent a stay and the TRO, Belbadi will leave behind only "worthless [Vandevco] shares in a shell enterprise."

Belbadi takes a very different view of these same events. It claims the condominium sales were, and are, necessary to pay back loans used to construct them in the first place. Selling condominiums constructed for sale is not "dissipating assets;" it is the normal course of business. One could certainly argue that failing to make such sales (presumably at a profit), while paying interest on the construction loans, is far worse for Vandevco's value.

Belbadi argues, and demonstrates, that Vandevco has a contractual obligation to the City of Vancouver to complete the development's "Fourth Tower" by the end of this year, and that its failure to do so will result in a $980,000 penalty payable to the City for the delay. Finally, it argues that the delays caused by a restored and extended TRO would jeopardize its option to buy a parking garage from the City at a discounted price—another consequence that would damage, not enhance, Vandevco's value. And it emphasizes that Belbadi, not Vandevco, is Cerner's

contracting partner—even an illicit flow of assets from Vandevco to Belbadi would seemingly increase Belbadi's worth, and therefore its ability to pay any judgment to Cerner.

Belbadi argues these factors also demonstrate the balance of equities and hardships weigh in its favor, and against a pre-judgment freeze of Vandevco's assets. It also argues the public generally has no interest in such an outcome, and certainly not the taxpayers of Vancouver.

Cerner replies Vendevco is not acting in the normal course of business, paying off its debts with sale proceeds, but rather funneling assets (Belbadi's in-state assets) to a Dhaheri-controlled foreign bank. It asks the Court to tailor an injunction that would freeze the dissipation of these assets without halting Vandevco's ordinary operations—without hurting its ability to develop the Vancouvercenter for the public interest. If a continuing operation provision would still inhibit Vandevco from meeting its obligations to the City, Cerner offers to increase its posted surety bond.

The Court does not agree that Cerner is likely to succeed on the merits (for the reasons outlined in the Court's Order relating to both removal and personal jurisdiction). And although there are "serious questions going to the merits" of those claims, and to the underlying claim that Belbadi owes it a substantial sum, the Court cannot conclude that the balance of hardships weighs sharply in Cerner's favor. The evidence of asset dissipation is thin; it looks more like the prudent conduct of the ordinary business of the Vancouver Center. Vandevco has demonstrated it will lose a penalty and an option to purchase a parking garage if it does not complete the building it agreed to construct, this year.

Cerner's evidence of irreparable injury is also insufficient. Belbadi agreed to guarantee the debt, not Vandevco. Even if it is true Belbadi is syphoning money from Vandevco, Belbadi is not beyond Cerner's reach, and there is no real claim Belbadi cannot afford to pay its obligation

(though there is a claim, and some evidence, that it will not willingly do so). Finally, the public interest is not served by shutting down the Vancouver Center Development, which is at least a predictable side effect of a TRO designed to preserve Vandevco's assets if Cerner obtains a large judgment against Belbadi.

Cerner's request that the Court tailor its injunctive relief to allow Vendevco "to operate in the normal course of business" but to prevent it from syphoning assets to its corporate parents is impractical at best. It would require the Court—a court without jurisdiction over the Defendants—to paternalistically monitor and marshal Vendevco's flow of assets to ensure it acts within its corporate form. The Court declines to enter an effective prejudgment writ of attachment against Vendevco, considering Cerner neither contracted with it nor obtained a judgment declaring it to be Belbadi's alter ego.

The Motion to Stay and to Restore [Dkt. #48] the state court TRO pending appeal is DENIED.

IT IS SO ORDERED.

Dated this 3rd day of March, 2017.

Ronald B. Leighton
United States District Judge